UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

JEFFREY R. FREDERICKSON,                         Case No. DT 10-00801
                                                 Hon. Scott W. Dales
                Debtor.
_____/

CATHERINE L. WOLFE,

                Plaintiff,                       Adversary Proceeding
                                                 No. 10-80351
v.

JEFFREY R. FREDERICKSON,

                Defendant.
_____/

## MEMORANDUM OF DECISION AFTER TRIAL

        PRESENT:    HONORABLE SCOTT W. DALES
                    United States Bankruptcy Judge


        Catherine Wolfe (the "Plaintiff") filed an adversary proceeding against her former

handyman, Jeffrey Frederickson (the "Defendant"), asking the court to deny him a bankruptcy

discharge under 11 U.S.C. § 727(a).  In her amended complaint, and again at trial, the Plaintiff

alleges that the Defendant is generally dishonest because he has purposely impoverished himself,

and because he transferred or destroyed a slot machine and two paintings with the intent to harm

his creditors, including the Plaintiff.  For these reasons, the Plaintiff contends the Defendant does

not deserve a discharge in bankruptcy.

        The court has carefully considered the evidence presented at trial, and for the following

reasons will direct the Clerk to enter judgment in Defendant's favor.

## I. JURISDICTION

The court has jurisdiction over the Defendant's bankruptcy case pursuant to 28 U.S.C. § 1334(a).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) (objection to discharge), referred to the bankruptcy court by the United States District Court under W.D. Mich. LCivR 83.2(a).

The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this adversary proceeding by Federal Rules of Bankruptcy Procedure 7052.

## II. FACTS

The court held a trial on October 19, 2010 in Traverse City, Michigan, at which the Plaintiff (a licensed attorney) appeared *pro se*, and the Defendant appeared through counsel.  The court heard testimony from five witnesses, and admitted ten exhibits pursuant to the parties' in-court stipulation.

Before filing his Chapter 7 bankruptcy petition on January 27, 2010, the Defendant served as the Plaintiff's handyman and carpenter for nearly ten years, repairing and maintaining her home as well as her rental properties.  According to her testimony, the Plaintiff was quite pleased with the Defendant's performance for many years and freely recommended him to her clients for roofing, carpentry, and similar work.  The court heard testimony from three such clients, Mr. and Mrs. Osby Newsome, and Debbie Sever.

The Newsomes, octogenarians who were acquainted with the Defendant's parents and grandparents, hired the Defendant to repair a roof that another contractor defectively installed. They were initially pleased with the Defendant's work except for what became a persistent leak

around an electrical box on an exterior wall.  Although they thought he should have fixed it, they never mentioned it to him.

According to Mrs. Newsome, she and her husband were prepared to hire the Defendant to repair water damage inside their home caused by the shoddy work of the first contractor.  But, after the Defendant gave them a quote, the Newsomes claim he never followed up.  The Defendant contends that this is because Mr. Newsome said he would call when they had some money to complete the repairs; the Newsomes contend that this conversation never took place, and they expected him to call them.  According to the Plaintiff's testimony, the Newsomes have still not repaired this water damage.

Ms. Sever testified that the Defendant gave her an informal quote to repair water damage to her basement, but she did not retain him to do the work.  She testified that she asked him to call her if she didn't call him first, perhaps leaving the Defendant in doubt as to who was supposed to make the first move.  He did not call and she eventually hired another contractor to do the job.

As part of his compensation for performing work on the Newsomes' roof during the summer of 2009, they gave the Defendant a used slot machine (the "Slot Machine") that they previously purchased for approximately $300.00.  The Defendant admitted that he transferred the Slot Machine to a friend shortly after his bankruptcy filing but before the first meeting of creditors.  From this testimony, the court concludes that the transfer occurred post-petition, for no consideration.  He also testified, credibly, that he tried in vain to sell the Slot Machine at yard sales for several months before the petition date.  The Defendant stated that his friend's wife expressed an interest in the Slot Machine, and after trying to sell it for many months, he believed it had little value.  He was therefore eager to make a gift of it in order to unclutter his relatively

small living space.  As for the post-petition nature of the transfer, the Defendant stated that he thought the Slot Machine was included in his home furnishings which he exempted from his bankruptcy estate.

At some point in their relationship, the Plaintiff gave the Defendant two paintings (the "Paintings") that she bought for $100.00 each.  The Defendant later returned the Paintings to the Plaintiff, but the Plaintiff gave them back to him.  The Defendant testified that at some point he destroyed the Paintings, which he regarded as valueless.  The parties provided no details regarding the timing of these transactions or when the Defendant destroyed the Paintings.

At some point in 2009, and perhaps earlier, the parties had a falling-out.  The Plaintiff suggests that the Defendant embarrassed and angered her by, among other things, becoming involved in an altercation with one of her tenants, threatening to break the tenant's finger, and then itemizing the squabble on her bill and charging her for it.  He also embarrassed her by not following up with the clients she referred him to regarding potential jobs.  The Plaintiff felt betrayed because she was trying to help him find work, but he displayed little interest and, the court infers, little gratitude.  At trial, the Plaintiff wondered what happened to the Defendant to cause him to disappoint her after nearly a decade of loyal service.

A review of the Defendant's amended answer, admitted into evidence, may provide some insight, though without much detail.  In this pleading, he stated he suffers from bi-polar disorder and possibly a closed-head injury resulting from a motor vehicle accident.  The court infers that these conditions may explain his lack of interest in pursuing work and the changes in his behavior.

The Defendant's invoices also suggest some frustration on his part with the Plaintiff.  For example, on July 17, 2009, the Defendant's invoice includes an entry for "drama day."  Pl. Exh.

**Page 5 of 10**

7. In addition, the Defendant testified he made himself unavailable to the Plaintiff and her clients because she "kept on harassing me."  He made a similar observation at his first meeting of creditors.  Pl. Exh. 1.

At trial, the Plaintiff testified that the Defendant made a false oath by including on his Schedule B an outstanding debt due from the Plaintiff even though she had a judgment against him exceeding the amount of this scheduled debt.  The court notes, having reviewed Schedule B, that the Defendant indeed scheduled the claim against the Plaintiff, but listed it as "disputed" and specifically noted the Plaintiff's position.

In further support of her false oath claim, the Plaintiff testified that the Defendant's income as reported on his 2009 tax returns ($5,950.00) differed from his income reported on his Statement of Financial Affairs ("SOFA") for the same period ($14,904.50).[1]  The documents admitted into evidence and judicially noticed reveal a discrepancy.

### III.  ANALYSIS

As set forth in the court's Pretrial Order dated July 28, 2010, the Plaintiff relies on 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), and (a)(4).  This statute provides, in relevant part, as follows:

> The court shall grant the debtor a discharge, unless --
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed --
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or

---

[1] Because the Plaintiff did not offer the Schedules or SOFA into evidence, and because her claim depends to some extent on these documents, the court will take judicial notice of them. *See* Fed. R. Evid. 201.

> > > (B) property of the estate, after the date of the filing of the petition;
> >
> > . . .
> >
> > > (4) the debtor knowingly and fraudulently, in or in connection with the case --
> > >
> > > > (A) made a false oath or account;
> > > >
> > > > (B) presented or used a false claim . . .

11 U.S.C. § 727(a).  The Plaintiff must prove her case by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991); *Attasi v. McLaren (In re McLaren)*, 990 F.2d 850, 853 (6th Cir. 1993).

The Plaintiff's theory of the case is three-fold.  First, she argues that the Defendant engaged in intentional "impauperization," meaning he purposely avoided working so that he could not pay his creditors.  Second, the Defendant transferred or destroyed the Slot Machine and the Paintings.  Third, the Defendant made false statements on his Schedules and SOFA.

A.      "Impauperization" Claims

In the absence of authority from the Plaintiff, and having reviewed § 727, the court concludes there is no legal basis to deny a debtor's discharge based upon his supposed "impauperization."  The statute enumerates the precise grounds for relief -- generally fraudulent activity involving concealment, transfer, or destruction of property.  Impauperization is not among the list.

Assuming, *arguendo,* that such a theory is colorable, the court finds by a preponderance of the evidence that the Defendant was justified in not pursuing work from the three witnesses who testified. First, the Defendant doubted the Newsomes could pay for his services.  Indeed, it is reasonable to infer that they had just made substantial payments on the original and remedial

roof work. Also, the interior work they discussed with the Defendant in the summer of 2009 remains undone to this day. It seems more likely that by now, the Newsomes would have retained another contractor to repair their home if they had the money to do so. These facts corroborate the Defendant's recollection that, after paying for the roof repairs, the Newsomes intended to recover financially before calling him to start on the interior project. As for Ms. Sever, the court finds the Defendant reasonably assumed she would call him if she intended to hire him, but she never called.

More generally, it appears the Defendant had decided to cut ties with the Plaintiff and her clients because he perceived she was harassing him. Certainly, it seems natural that he would avoid her and her clients after she took steps to collect legal fees he owed her for representing him in a slip-and-fall lawsuit in which he recovered $2,500.00.[2]

Therefore, the court rejects the Plaintiff's case to the extent it is premised on the Defendant's failure to accept work from her or her clients.

B.      The Paintings

To the extent the Plaintiff's case depends upon the Defendant's admitted destruction of the Paintings, she failed to establish by a preponderance of the evidence when that act occurred. Under the statute, she was required to establish that the Defendant destroyed the Paintings within one year before the petition date (January 27, 2010), with the intent to hinder, delay, or defraud creditors. She offered no evidence establishing when he burned the Paintings. Moreover, the court finds from the credible testimony at trial that the Defendant did not intend to defraud or hinder or delay the Plaintiff in her capacity as creditor. He testified that he destroyed the Paintings because they reminded him of her.

---

[2] The Plaintiff eventually sued the Defendant in small claims court in October, 2009 to collect her fees and a $1,500.00 advance. She obtained a judgment against him for $2,098.50.

Moreover, by the Plaintiff's own admission, the Paintings had more sentimental value than any meaningful boon for creditors. Their *de minimus* and sentimental value has a bearing on the Defendant's intent. The fact that he destroyed the Paintings rather than conceal them for his own future enjoyment suggests a more personal motive than the fraudulent intent that § 727 requires as a condition of withholding a discharge. In other words, the Defendant's obvious animosity toward the Plaintiff is not the sort of intent Congress had in mind when it enacted § 727. The statute punishes pilfering, not petulance.

So, whether the Defendant destroyed the Paintings post-petition or within one year before the bankruptcy filing, the court does not find the requisite fraudulent intent, and consequently rejects the Plaintiff's theory to the extent premised on the Paintings.

C.      The Slot Machine

Although the Plaintiff established that the Defendant transferred the Slot Machine post-petition -- conduct clearly implicating § 727(a)(2)(B) -- the court finds he did not have the requisite fraudulent intent when he made the transfer. First, the Slot Machine had relatively little value, as the Newsomes' and the Defendant's testimony established. They bought it for approximately $300.00 some time ago, and he was unable to sell it over several months.[3]

Second, when the Plaintiff asked the Defendant about the Slot Machine at the first meeting of creditors, he did not conceal the fact that he gave it to a friend two weeks before the hearing. Pl. Exh. 1. This candor suggests no culpability.

Third, the Defendant testified that he regarded the Slot Machine as part of his household furnishings, presumably those mentioned generally on Schedules B and C. The court infers,

---

[3] Nothing in this opinion should be construed to authorize debtors to decide for themselves that they may withhold from their creditors any property of the estate simply because they regard it as insubstantial. Without exception, that discretion resides with the bankruptcy trustee as the estate's representative. *See, e.g.*, 11 U.S.C. §§ 323(A), 554(a) & 704(a)(1). Property value, however, may be material to the court's decision if it sheds light on a debtor's intent. For example, a debtor generally has less incentive to conceal lower-value than higher-value assets.

based upon the Defendant's testimony and exemption claim, that he regarded the Slot Machine (albeit incorrectly)[4] as his to dispose of as he wished.  If the Defendant had hidden a highly valuable item of property, and failed to disclose its transfer or location at the first meeting of creditors, the court would be more inclined to infer fraudulent intent.  Instead, the court credits the Defendant's testimony that he did not intend to defraud anyone, but only wished to do away with an insignificant piece of furniture cluttering his small house -- a thing that his friend's wife coveted for reasons known only to her.

Because the Plaintiff failed to establish the Defendant's fraudulent intent by a preponderance of the evidence, her case under 11 U.S.C. § 727(a)(2)(B) also fails.

D.      False Oath

The Plaintiff's false oath case fares no better.  To the extent she claims the Defendant falsely listed a debt from her on his Schedules, a review of the Defendant's Schedule B clearly shows that he put the Chapter 7 trustee on notice that the Plaintiff disputed the claim.  In his testimony at the first meeting of creditors, he acknowledged that the state court, in ruling in the Plaintiff's favor, rejected his claim, yet he evidently felt aggrieved by that decision.  Pl. Exh. 1. By listing the claim on Schedule B and candidly admitting the controversy, Defendant undercuts Plaintiff's false oath theory.

Similarly, the supposed deficiencies in the Defendant's professionally-prepared tax returns do not constitute a false statement made in connection with this bankruptcy proceeding, as § 727(a)(4) requires.  The Plaintiff suggests that the Defendant earned more income in 2009 than he reported on his IRS Form 1040.  In fact, the reported income for this period on his SOFA is higher.  Although the court acknowledges the discrepancy, it is just as plausible that the SOFA

_____

[4] He transferred the Slot Machine before the deadline for objecting to exemptions had passed under Fed. R. Bankr. P. 4003(b).

is accurate and the Defendant's IRS Form 1040 is not, as the other way around.  The SOFA is a statement made in connection with the bankruptcy case; the tax return is not.  The Plaintiff has provided no evidence that the SOFA is false, just that it does not mirror the return.  Moreover, it seems unlikely that a debtor who wants to hide income from his creditors would inflate his income on a SOFA.

Therefore, the court rejects the Plaintiff's theory to the extent premised on a false oath made by the Defendant in his Schedules or SOFA.

### IV.  CONCLUSION AND ORDER

The Plaintiff has failed to carry her burden of proof by a preponderance of the evidence. Therefore, the court will enter judgment dismissing this adversary proceeding with prejudice, and will direct the Clerk to enter Defendant's discharge in accordance with the court's usual procedures.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.      the Clerk shall enter a discharge in the Defendant's bankruptcy case in accordance with Fed. R. Bankr. P. 4004(c)(1); and

2.      the Clerk shall enter judgment dismissing this adversary proceeding with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Catherine L. Wolfe and Paul I. Bare, Esq.

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: October 22, 2010**